NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| DEVAN WORKMAN and DARREN WORKMAN,<br><br>Plaintiffs,<br>v.<br><br>TOPA VI EQUITIES CORPORATION,<br><br>Defendant. | Civ. No. 16-31<br><br>**OPINION** |

THOMPSON, U.S.D.J.[1]

## INTRODUCTION

This matter comes before the Court on Defendant's Motion for Partial Summary Judgment. (ECF No. 88.) Plaintiffs oppose. (ECF Nos. 112, 113.) The Court has decided the Motion based on the written submissions of the parties and without oral argument, pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated herein, Defendant's Motion for Partial Summary Judgment is denied.

## BACKGROUND

This cases arises out of a motor vehicle accident. The following facts are undisputed. Plaintiffs Darren and Devan Workman ("Plaintiffs"), a married couple from Alabama, were vacationing on St. John. On February 17, 2016, they were loading groceries into their parked rented Jeep Wrangler in the parking lot of Calabash Market. A 2006 GMC C6500 Coors Light truck was parked behind them, operated by Jermaine England. (Def.'s Statement of Undisputed Material Facts ("SMF") ¶ 12, ECF No. 88.) Mr. England and his helper, Kaleel Peters, who was

---

[1] The Hon. Anne E. Thompson, United States District Judge for the District of New Jersey, sitting by designation.

1

also present, are employees of Bellows International ("Bellows"), which is owned by Defendant Topa VI Equities Corporation ("Topa" or "Defendant"). (*Id.* ¶¶ 1–2, 12–13.) Mr. England was making deliveries for Bellows to Calabash Market. (*Id.* ¶ 13.)

Mr. England had been driving the particular delivery truck for approximately one year. (*Id.* ¶ 14.) His usual practice when making deliveries to Calabash Market was to pull over to the right side of the road where the market was located and unload without having to cart the merchandise across the street. (*Id.* ¶ 16.) However, on February 17, 2016, Calabash Market's owner, Ali, had parked his truck in front of the market. (*Id.* ¶ 17.) Mr. England pulled over on the left side of the road, stopped the truck, put it in neutral, but kept the engine running. (*Id.* ¶ 18.) He later testified that he then set the yellow emergency brake. (Pls.' Counterstatement of Materials Facts ("CMF") ¶ 18, ECF No. 112.) He had been trained to turn the wheels of the vehicle in towards a wall to prevent rolling (*id.* ¶¶ 20, 24), but video surveillance suggests the wheels were not turned in (*id.* ¶¶ 31–32).

Mr. England sent Mr. Peters into the market to ask Ali to move his truck so they could park and unload in their normal spot. (Def.'s SMF ¶ 19.) After waiting for half an hour for Mr. Ali to move his truck, they decided to unload the Topa truck from across the street instead of continuing to wait. (*Id.* ¶ 20.) After exiting the cab of the Topa truck, Mr. England climbed into the back of the truck and began offloading the delivery to Mr. Peters, who remained on the street. (*Id.* ¶¶ 21, 23.) He left the engine running and the truck in neutral. (*Id.* ¶ 22.) At this point, the Workman rental Jeep was parked in front of the Topa truck.

During the off-loading process, Mr. Peters noticed the truck begin to roll and shouted to Mr. England that it was moving. (*Id.* ¶¶ 23–24.) Mr. England jumped out of the truck and ran toward the cab in an attempt to enter the cab and apply the brakes. (*Id.* ¶ 25.) Before he could

2

reach the cab, the Topa truck struck Devan Workman, pinning her against the Jeep. (*Id.* ¶ 26.) Darren Workman managed to move out of the truck's path, but witnessed his wife being pinned.

After the impact, Mr. England climbed into the cab and reversed the truck away from Ms. Workman. (*Id.* ¶ 27.) Mr. England later could not recall whether he had to disengage the parking brake in order to move the truck. (Pls.' CMF ¶ 29.) He reversed the truck, stopped it, applied the parking brake, and turned off the engine. (Def.'s SMF ¶ 28.) Ms. Workman suffered serious physical injuries including four pelvic bone fractures, a hip socket fracture, and a spinal fracture. (*See* Compl. ¶ 14.)

Shortly after the accident, Mr. Workman overheard Mr. England say to Mr. Peters that he had been telling "them" about the bad brakes on the truck. (Pls.' Ex. 6, Workman Dep. 34:12–17, ECF No. 112-8). Virgin Islands Police Department Officer Kerdin Lewis, the investigating officer, testified that when he arrived at the scene Mr. England again said that he had been telling "them" about the brakes on the truck not working properly before the incident. (Pls.' CMF ¶ 1.) However, in deposition Mr. England denied making those statements and stated that he never experienced or reported problems with the brakes on the truck prior to the incident. (*See, e.g.*, Pls.' CMF ¶ 21.) Officer Lewis cited Mr. England for "failure to operate a vehicle in a safe and prudent manner," but deferred inspection of the brake system to Officer Joycelyn Lee-Bobb, Motor Carrier Inspector for the Virgin Islands Police Department, who is trained to conduct such inspections. (Pls.' CMF ¶¶ 4, 9.)

The Topa delivery truck remained parked and in place for approximately three to four hours post-collision until Calvin Harris, a Bellows Warehouse Manager, arrived from St. Thomas and inspected the vehicle. (*Id.* ¶ 29.) Mr. Harris did not identify any mechanical problems with the truck and drove it to Dolphin Market on St. John. (*Id.* ¶ 30.) When Mr. Harris arrived at Dolphin Market, he stopped the truck, applied the parking brake, and left it there

3

overnight. (*Id.* ¶ 31.) The following day, a tow truck arrived on St. John and located the Topa truck at Dolphin Market, where it remained parked with its parking brake engaged. (*Id.* ¶ 33.) The tow truck towed the Topa truck to the Bellows facility. (*Id.* ¶ 34.)

The day after the incident, Officer Lee-Bobb inspected the truck at the Bellows facility. (*Id.* ¶ 12.) When she arrived, she encountered a mechanic under the left rear side of the truck with a wrench in his hand, who reported he was "just looking" when she asked him what he was doing under the truck. (*Id.* ¶ 14.) After a level five motor vehicle carrier safety inspection, Officer Lee-Bobb discovered that the brakes were out of adjustment (the right side more so than the left) and had an audible air leak in the brake system; she took the vehicle out of service, prohibiting its operation until it was repaired. (*Id.* ¶¶ 15–16.)

Bellows has a fleet of seven delivery trucks but uses only three to four of those trucks for everyday beverage deliveries on St. Thomas and St. John. (Def.'s SMF ¶¶ 3–4.) Each driver of a truck performs a pre-trip walk-around inspection of their delivery vehicle, and every Monday each truck driver is required to fill out a "Vehicle Inspection Report" which identifies mechanical or maintenance problems with the vehicle. (*Id.* ¶ 7; *see* Pls.' Resp. to Def.'s SMF ¶ 7, ECF No. 112; *see also* Pls.' CMF ¶ 25.) The record contains conflicting information about whether and when any Bellows employees, including Mr. England, complained to Bellows about problems with this particular delivery truck's brakes prior to the day of the accident. (*Compare* Def.'s SMF ¶¶ 36–37, 43, *with* Pls.' Resp. to Def.'s SMF ¶¶ 36–37, 43; *see also* Pls.' CMF ¶¶ 41–43.)[2]

---

[2] In Defendant's Statement of Material Facts, the paragraph numbered 43 appears in sequence between paragraphs 37 and 38. Because both parties have used this same numbering system, the Court repeats the irregular numbering here.

4

On April 21, 2106, Plaintiffs brought this tort action against Defendant alleging negligence and gross negligence, loss of consortium, and negligent infliction of emotional distress. (ECF No. 1.) Defendant moved to dismiss the Complaint, except the negligence claim, on June 8, 2016. (ECF No. 8.) That motion was never decided, and the parties engaged in discovery, pursuant to a trial management order dated August 25, 2016 (ECF No. 37). After discovery, Defendant answered the Complaint on August 11, 2017. (ECF No. 87.) The parties engaged in court-ordered mediation on August 17, 2017. The mediator's report filed on August 22, 2017 says the parties were at a total impasse and required court resolution. (ECF No. 90.)

Defendant filed the instant Motion for Partial Summary Judgment on the gross negligence claim on August 14, 2017. (ECF No. 88.) Plaintiffs filed opposition on November 27, 2017. (ECF Nos. 112, 113.) Defendant replied on February 9, 2018. (ECF No. 117). The Court has excused the late filings and denied as moot intervening motions for extensions of time to file. (ECF No. 120.) This case was reassigned to U.S. District Judge Anne E. Thompson on April 6, 2018. (ECF No. 118.) At a telephone status conference on April 12, 2018 at 11:00 AM, the parties asked the Court to decide Defendant's Motion for Partial Summary Judgment, and not Defendant's earlier-filed Motion to Dismiss. (*See* ECF Nos. 120, 122.) Accordingly, the Court administratively terminated the Motion to Dismiss. (ECF No. 120.) The Court now considers the Motion for Partial Summary Judgment.

## LEGAL STANDARD

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it will "affect the outcome of the suit under

5

the governing law." *Id.* When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983).

At summary judgment, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. The non-moving party must "point to concrete evidence in the record" that shows the existence of a genuine issue of material fact and may not rely on "mere allegations, conclusions, conjecture, and speculation" to defeat summary judgment. *Abney v. Univ. of the V.I.*, 2016 WL 2349108, at *4 (D.V.I. May 3, 2016). Even where undisputed or unopposed, "[w]here the moving party has the burden of proof on the relevant issues, . . . the district court must determine that the facts specified in or in connection with the motion entitle the moving party to judgment as a matter of law." *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). The Court must grant summary judgment against any party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## DISCUSSION

The sole issue presented on this Motion is whether Plaintiffs have adduced sufficient evidence that Defendant's actions or inactions amount to gross negligence. The gross negligence claim is significant in this case because under Virgin Islands law, non-economic damages for any injury to a person arising out of a motor vehicle accident may not exceed $100,000 without a "finding of gross negligence or willful conduct." *Thomas v. Rijos*, 780 F. Supp. 2d 376, 382 (D.V.I. 2011) (quoting 20 V.I.C. § 555). Defendant argues that there is no evidence of reckless,

6

wanton, or outrageous conduct sufficient to support the gross negligence claim. Plaintiffs respond that there is sufficient evidence of conscious indifference to substantial harm from monitoring and maintenance failures of the truck's brake system to submit to a jury.

Though traditionally considered a question of fact for the jury to decide, gross negligence may be decided "as a matter of law where the conduct in question falls short of gross negligence, the case is entirely free from doubt, and no reasonable jury could find gross negligence." *Booth v. Bowen*, 2008 WL 220067, at *4 (D.V.I. Jan. 10, 2008) (quoting *Cohen v. Kids Peace Nat'l Ctrs., Inc.*, 265 F. App'x 490, 492 (3d Cir. 2007)). Defendants argue that the proper standard for gross negligence in the Virgin Islands is conduct evidencing "a wanton and reckless disregard for others." *Tutein v. Parry*, 2006 WL 3842108, at *4 (V.I. Super. Ct. Oct. 24, 2006). However, this Court has previously held that, based on the language in the Virgin Islands statutory damages cap, "gross negligence, as used in 20 V.I.C. § 555, does not necessarily require a showing of reckless or wanton conduct." *Thomas*, 780 F. Supp. 2d at 385.

The *Thomas* Court defined gross negligence in reference to the Restatement (Second) of Torts, Third Circuit case law, and prior decisions of the District Court of the Virgin Islands as "conduct that presents 'an unreasonable risk of physical harm to another . . . that . . . is *substantially greater* than that which is necessary to make conduct negligent.'" *Thomas*, 780 F. Supp. 2d at 386 (quoting *Booth*, 2008 WL 220067, at *3) (citing *Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 175 (3d Cir. 2004)). Therefore, while reckless or wanton conduct would meet the threshold, it is "not required" to establish gross negligence under Virgin Islands law. *Thomas*, 780 F. Supp. 2d at 386; *accord Francis v. Carmen V. Ruan Living Tr.*, 2016 WL 5867452, at *5 (V.I. Super. Ct. Oct. 5, 2016); *Hill v. De Jongh*, 2012 WL 1439591, at *6 (V.I. Super. Ct. Apr. 19, 2012). *But see Yusuf v. Ocean Props., Ltd. & Affiliates*, 2016 WL 9454143, at *4 (V.I. Super. Ct. Mar. 7, 2016) ("After extensive review, the Court finds that the soundest rule of law for the

7

Virgin Islands is to define gross negligence as wanton or reckless behavior demonstrating a conscious indifference to the health and safety of persons or property.").

Defendant points to the following record evidence in support of its motion: no braking issues were apparent on the date of the accident and the Topa truck had no prior incidents or reports of brake failure (Def.'s Br. at 19–20, ECF No. 88; Def.'s Reply at 15, 20–21, ECF No. 117); drivers conducted daily walk-arounds of the truck before making their deliveries, Topa's mechanic fixed issues identified on the weekly vehicle inspection reports, and Topa performs normal maintenance on its fleet of trucks (Def.'s Reply at 21); and the vehicle's brake system has built-in redundancies and no mechanical defect appears to have caused the accident (*id.* at 15–20). Defendant further contends that, though Mr. England testified that he engaged the spring brake to secure the vehicle, he may not have, but this failure would only amount to ordinary negligence. (Def.'s Br. at 18–19.)

In opposition, Plaintiffs respond that the record suggests the accident resulted from some combination of vehicle failures related to the service brakes, spring brakes, and slack adjuster, and call into question whether Mr. England properly engaged the spring brake in the first instance. Plaintiffs argue that Defendant had notice of some brake issues on this particular truck, failed to follow its own safety and maintenance protocols, and failed to implement policies that would have put it on notice of systemic brake issues. Among other evidence, Plaintiffs cite testimony and documentation showing that:

- Delivery truck drivers were not trained to or required to test the brakes as part of a standard pre-trip inspection, Mr. England never did so, and Topa did not ensure that drivers actually conducted their required weekly inspections of the vehicle's brakes (Pls.' Br. at 3–4, 7–9, 11, ECF No. 113);

- Post-accident inspections of the truck by Officer Lee-Bobb revealed significant brake issues—an audible air leak related to the service brakes and a significantly out-of-alignment slack adjuster—that required immediately decommissioning the vehicle until it could be repaired (Pls.' Br. at 4);
- A December 2015 driver inspection report reflected an issue with the engine brake, but many of Mr. England's reports reflected no information whatsoever about the brakes—including whether he had checked them before departing for deliveries (Pls.' Br. at 2–3);
- Though disputed as hearsay, and controverted by Mr. England's own deposition testimony, Mr. England was overheard by Officer Lewis and by Mr. Workman making statements suggesting that he had informed Defendant about problems with the brakes on the Topa truck; and
- The facts support a finding of gross negligence whether or not Mr. England actually properly set the spring brake on February 17, 2016, because, if he did, a preventable mechanical failure is the only explanation for the accident, and if he did not, his failure to turn his wheels toward the curb to prevent the truck from rolling created substantial risk of harm beyond ordinary negligence (Pl.'s Br. at 6–7).

Plaintiffs also assert that their expert witness will opine that Defendant's maintenance and safety protocols are inadequate under governing regulations and Virgin Islands and federal law to ensure the brake system is safe before the vehicles are dispatched. (Pls.' Br. at 3 n.1.)

The parties do not agree on a consistent narrative, and the Court cannot decide this issue as a matter of law. First, the parties dispute what series of actions or inactions plausibly explain this accident. Second, the parties dispute whether Defendant knew or should have known that the vehicle could fail, exhibiting conscious indifference to the potential for a catastrophic collision. Due to the abounding genuine disputes of material facts in this case, and the need for expert

9

testimony to explain the plausible causes of the accident, the question of gross negligence should be submitted to a jury. *Stotesbury v. Pirate Duck Adventure, LLC*, 2013 WL 3199353, at *7 (D.V.I. June 25, 2013) ("[W]hether Plaintiffs can prevail on their gross negligence claim . . . will turn on credibility determinations and factual conflicts appropriately resolved by the fact finder at trial."). Therefore, Defendant's Motion for Partial Summary Judgment is denied.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment is denied. An appropriate order will follow.

Date: 4/27/18

ANNE E. THOMPSON, U.S.D.J.